# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOANN STUYVENBERG,

        Plaintiff,

v.                                                               Case No. 09-C-461

GC OF APPLETON, INC.,

        Defendant.

# DECISION AND ORDER

Plaintiff Joann Stuyvenberg brought this action alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* resulting from a hostile work environment. Her employer, an Appleton franchise of the Golden Corral restaurant, has moved for summary judgment. For the reasons given below, the motion will be granted.

**I. Background**

The operative facts are not extensive. In December 2007 Plaintiff began working as a member of the wait staff at the Appleton Golden Corral restaurant. On January 24, 2008, roughly six weeks later, Chris Dittel and Matthew Clements were working at the restaurant during Stuyvenberg's shift, and Stuyvenberg alleges that both men sexually harassed her within a ten-minute period. First, while she was squatting down rinsing a rag in a bucket, Dittel approached her and placed his groin area near her head and began simulating sexual activity. Stuyvenberg told him to go away. Soon after, while she was still squatting down, Clements grabbed the back of her head and pulled it into his genital area and began pretending like Stuyvenberg was performing oral sex

on him. Stuyvenberg told him he was being inappropriate and asked him to go away. (Both men have denied these incidents, but for purposes of summary judgment the Plaintiff's version of events is accepted as true.)

Following these incidents, Stuyvenberg went to a supervisor, Terri Schroeder, to tell her what had happened. She also expressed concern that the two men would become hostile if they found out she had reported their activity. Thus, she asked that Schroeder not take any action until the end of the shift, which was only a half-hour away. Schroeder raised the matter with another assistant manager, John Rivord, who advised Schroeder to talk with Clements and Dittel. Schroeder advised the two of them that she was concerned with their conduct and warned them not to do it again, but she did not mention Stuyvenberg by name as the source of her concern. Even so, it was not difficult to figure out who had reported them, and within a few minutes Clements approached the Plaintiff and asked, "did you f---ing narc on me?" (PPFOF ¶ 18.) Clements then began yelling to other employees, telling them that Stuyvenberg would tell on them if they even looked at her. Stuyvenberg felt intimidated and began crying.

The next day, Stuyvenberg arrived an hour before her shift to talk to the general manager, Patrick Dunn. Dunn stated that he would "get to the bottom of this," and began interviewing the parties named above, including the assistant managers. (PPFOF ¶ 36.) He did not call Stuyvenberg at home or otherwise communicate with her about any inquiry he was making, however. He later explained that there had been no witnesses to the two events and he was reluctant to take disciplinary action in the absence of corroboration or any past history of harassment. In any event, Stuyvenberg did not show up for work or call the restaurant after January 25. She states that she was afraid to come to work on the 26th because Dittel and Clements were scheduled to work that

day. Neither Dunn nor anyone else at the restaurant called to inquire about her absence or to inform her about the results of their investigation into her allegations, and Stuyvenberg did not contact anyone at the restaurant to learn what had happened.

On February 14, however, Stuyvenberg sent an email through the corporate Golden Corral website repeating her allegations of harassment. Her email was forwarded to Jeff Seaton, the Appleton franchise's director of operations, who spoke with Dunn. Seaton then called Stuyvenberg and explained that her job was still hers if she wanted it. Stuyvenberg stated that she would think about it, but she did not return to work or contact the restaurant after that.

## II. Analysis

Summary judgment is proper if the record demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To establish a hostile work environment under Title VII, a plaintiff must generally show the following:

> (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on her sex; (3) the sexual harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) a basis for employer liability exists.

*Durkin v. City of Chicago,* 341 F.3d 606, 613 (7th Cir. 2003).

When the harassment is caused by co-workers rather than a supervisor, the employer can only be liable for a hostile work environment claim "if the co-worker created the hostile work environment and the employer was negligent either in discovering or remedying the harassment." *Velez v. City of Chicago,* 442 F.3d 1043, 1047 (7th Cir. 2006). Here, Plaintiff argues that Golden

Corral of Appleton was negligent in failing to remedy the harassment because it failed to adequately investigate her allegations and failed to communicate with her after she left; it also took no disciplinary action against Clements and Dittel. Golden Corral of Appleton argues that the conduct Plaintiff complains of was not serious enough to constitute a hostile work environment. It further argues that, even if it was, there is no basis for employer liability because it took appropriate remedial actions.

**A. Hostile Work Environment**

The parties debate whether the harassment Stuyvenberg allegedly experienced rises to the level of a hostile work environment. As the Seventh Circuit has recently explained:

> The answer to that question turns on whether Lake's alleged harassment was "severe or pervasive enough to create a hostile work environment." *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008). "Whether the harassment rises to this level turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 806-07 (7th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)). Further, a claim for a hostile work environment must be tested both objectively and subjectively. *Id.* at 807. That is, the plaintiff must subjectively believe that the harassment was sufficiently severe or pervasive to have altered the working environment, and the harassment must also be sufficiently severe or pervasive, from the standpoint of a reasonable person, to create a hostile work environment.

*Turner v. The Saloon, Ltd.,* 595 F.3d 679, 685 (7th Cir. 2010).

Courts have recognized that it is often difficult to draw the line between actionable conduct and offensive, but inactionable, conduct:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers . . . . It is not a bright line, obviously, this line between a

4

merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other . . . .

*Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir. 1995).

In making out a hostile work environment case, a plaintiff must show that the complained-of activity was not just subjectively offensive but would also have been deemed severe by a reasonable person. *Turner,* 595 F.3d at 685. At the summary judgment stage, determining whether co-workers' conduct is severe or pervasive often involves comparing their conduct to the seemingly infinite supply of cases describing other employees' workplace misbehavior. For example, the Defendant cites *McPherson v. City of Waukegan,* in which a supervisor made several suggestive comments to a female employee and opened the plaintiff's shirt to see her bra. 379 F.3d 430 (7th Cir. 2004). The court described that conduct as "lamentably inappropriate" but not sufficiently pervasive or severe to be actionable. *Id.* at 439. The Defendant believes the same holds true here.

In essence, the Defendant argues that the offensive conduct was of such brief duration (a few seconds on each occasion) that in no sense could it be described as pervasive. The two acts were unprompted and they were not part of any pattern or history of such behavior. As soon as Plaintiff told the men to stop, they did. But a work environment can become hostile through a single act if the act is severe or offensive enough. *See Jackson v. County of Racine,* 474 F.3d 493, 499 (7th Cir. 2007) ("It is important to recall that harassing conduct does not need to be both severe and pervasive. One instance of conduct that is sufficiently severe may be enough." (citation omitted)). The Seventh Circuit has noted that "[p]erhaps the most heavily emphasized factor in our cases is whether there was inappropriate touching." *Turner*, 595 F.3d at 685. Although typically the allegation is that the employee groped or inappropriately touched the plaintiff's breast or buttocks,

5

there seems little reason to differentiate when the employee grabs the plaintiff's head and pulls it into his genital area. In both situations there is unwanted touching of a sexual nature, and a reasonable woman in Plaintiff's position might well find what happened to be repugnant. Accordingly, even though the alleged encounters were very brief, I conclude that Plaintiff has at least created a genuine issue of material fact as to whether her work environment became hostile.

**B. The Employer's Response**

As noted above, when the hostile work environment arises out of the alleged activities of co-workers rather than supervisors, there has to be an independent basis for finding the employer itself liable apart from the mere fact that it is the employer. In short, Stuyvenberg has to show that "the employer was negligent either in discovering or remedying the harassment." *Velez,* 442 F.3d at 1047. Here, Stuyvenberg argues that her employer failed to conduct an adequate investigation after she reported the harassment, and it failed to discipline Clements and Dittel. She further asserts that no one at the restaurant contacted her after she stopped showing up for work. Finally, she argues that even though Seaton explained that her job was still there if she wanted it, he refused to guarantee that Clements and Dittel would be reprimanded or separated from her. These shortcomings, she argues, establish that the employer was negligent in remedying the situation.

A central problem with Stuyvenberg's argument is that she voluntarily left work without any further communication between herself and her superiors. She did not call to explain that she was not coming into work until the investigation was complete, or until Clements and Dittel were separated from her; she simply stayed home. When an employee stops showing up for work without explanation – particularly when the employee has only been there for six weeks – the employer would be entitled to conclude that it need not "remedy" the situation any further because

the complaining employee has left. Once an employee has left, any investigation into the events alleged by that employee will become a largely academic exercise, and Title VII is not concerned with harassment in the abstract. Instead, it requires employers to address the problem at hand: "[i]n assessing the corrective action, our focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Porter v. Erie Foods Intern., Inc.,* 576 F.3d 629, 637 (7th Cir. 2009). "Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Saxton v. AT & T Co.,* 10 F.3d 526, 536 (7th Cir. 1993). Thus, when the harassment appears unlikely to be repeated due to an employee's apparent resignation, the employer is relieved of its duty to take additional remedial measures.

But this is not to say the employer here was lackadaisical in its attempt to remedy the situation. Given the exceedingly brief nature of the incidents and the fact that there were no witnesses, any reasonable investigation would involve exactly what the Defendant's managers did here. Upper management interviewed the assistant managers and the employees accused. The employees denied the allegations. Even now, it is unclear from Stuyvenberg's brief what more the employer could have done under these circumstances. The mere fact that her boss did not call her after she left is not enough to violate Title VII.

It is apparent, however, that Stuyvenberg takes issue not just with the method of the investigation but the result as well, *i.e.,* the fact that Clements and Dittel were not disciplined. She asserts that management refused to discipline them because there were no witnesses or security camera tapes, making it a "she said, he said" situation. In her view, the managers' insistence on corroboration imposes too high a standard of evidence in the workplace. But Stuyvenberg does not cite any cases supporting the premise that an employer cannot conduct an investigation as it sees

7

fit, so long as it is a good faith effort to remedy the harassment. The unstated but logical conclusion of Plaintiff's position is that an employer is bound by federal law to credit every employee's allegation of sexual harassment and must discipline or fire those accused even if there is no corroborating evidence. That, of course, cannot be true: Title VII does not mandate corrective action merely upon the filing of a complaint. What's lacking here is any evidence that the employer turned a blind eye or knew that Clements or Dittel had a history of harassment. If such a history existed, a plaintiff could plausibly assert that it was unreasonable for her employer not to believe her version of events. But here, an employee of only six weeks' tenure cannot demand that her employer discipline other employees or take other corrective action on her say-so alone, particularly for a first-time incident. Without any evidence of bad faith or any reason the employer might have known that Clements or Dittel had a history of harassing behavior, the mere fact that the employer did not discipline them in the way Plaintiff now wants does not suffice to violate Title VII.

In sum, the Plaintiff's unexplained and lengthy absence from work would have allowed her employer to conclude that any chance of future harassment was minimal and that it need not make any further efforts to remedy the harassment. Even so, her employer conducted the only reasonable kind of investigation that made sense under the circumstances. Because it was not required to believe Plaintiff's version of events, the fact that the employer did not discipline Clements and Dittel does not mean it failed to take steps reasonably calculated to stop the harassment.

## C. Constructive Discharge

Plaintiff also alleges she was constructively discharged, although it is unclear exactly how this allegation fits within the context of this case's facts. Typically a constructive discharge claim is an allegation that the employer discriminated against the plaintiff on the basis of sex (or race, etc.)

and took an adverse employment action against her, *i.e.,* the discharge itself. Such claims can also arise in a hostile work environment case involving actions attributable to a supervisor. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 143 (2004). But when the case involves the actions of co-workers, rather than supervisors, it is unclear what a constructive discharge argument adds to the mix. Here, the constructive discharge argument appears to be an effort to establish liability on the part of the employer for Clements' and Dittel's alleged harassment. As such, the argument is merely another way of alleging that the employer did not take adequate measures to remedy the alleged harassment. Having rejected that argument above, I can find no basis for finding employer liability based on a constructive discharge under these circumstances.

In addition, even if the constructive discharge argument were construed as some sort of independent claim against the employer, there is no basis in the record to conclude that the employer's actions were deliberate, particularly since the employer kept the job open for Stuyvenberg. "[A] plaintiff must show deliberate action on the part of the employer-either deliberate sexual harassment or a deliberate effort to force resignation-to establish a constructive discharge." *Engel v. Rapid City School Dist.*, 506 F.3d 1118, 1127 (8th Cir. 2007) (citing *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 74 (2d Cir.2000); *Kline v. N. Texas State Univ.,* 782 F.2d 1229, 1234 (5th Cir. 1986)). No one would conclude from the evidence that the employer deliberately refused to discipline Clements and Dittel in an effort to get Stuyvenberg to quit.

Even if Stuyvenberg could establish some kind of deliberate action on the employer's part, the conditions of the work place were far milder than what is required to find a constructive discharge. A "constructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into involuntary resignation." *Roby v. CWI,*

*Inc.,* 579 F.3d 779, 785 (7th Cir. 2009). "Such cases require a plaintiff to show a more egregious situation than a hostile work environment because an employee is normally expected to continue working while seeking redress." *Id.* Here, there is no evidence that the working conditions at the restaurant were so intolerable that a reasonable employee would be forced to quit. Even if Plaintiff could show a hostile work environment resulting from the two incidents described above, it would be pure speculation to believe that there was a danger that similar incidents would be repeated in the future. Both men had been warned and talked to about the allegations. The incidents were isolated, and even though Clements was clearly upset that Stuyvenberg had "narced" on him there was no suggestion that he would harass her again. Accordingly, the constructive discharge argument provides no independent basis for employer liability under these circumstances.

### III. Conclusion

None of the above is to say that what Clements or Dittel allegedly did were appropriate actions. But this lawsuit is not brought against Clements or Dittel – it is brought against their employer. To make one party pay for the misdeeds of another requires something more than is present here, even taking the evidence in the light most favorable to Stuyvenberg. Accordingly, for the reasons given above, the Defendant's motion for summary judgment is **GRANTED** and the case is **DISMISSED**.

**SO ORDERED** this   22nd   day of September, 2010.

                                                s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge